UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,

Plaintiff,

- against -

STEVEN D'ARIENZO, DONNA D'ARIENZO, TAYLOR D'ARIENZO, GREGORIO PARADES, LINA A. FERNANDES and ROBERT McGREGOR,

Defendants.
---------------------------------------------------------------X

**MEMORANDUM AND ORDER**
19-CV-3319 (RRM) (CLP)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Allstate Insurance Company ("Allstate") brings this action against two of its insureds, Steven D'Arienzo and Donna D'Arienzo (collectively, "the D'Arienzos"); the D'Arienzos' daughter, Taylor D'Arienzo ("Taylor"); Robert McGregor, who owned the car Taylor was driving at the time of the accident at issue; Gergorio Parades, the owner and operator of the other vehicle involved in the accident; and his wife, Lina A. Fernandes, principally seeking a declaration that Taylor D'Arienzo is not covered under the insurance policy held by the D'Arienzos. Allstate now moves for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons stated below, Allstate's motion is granted in part and denied in part.

**BACKGROUND**

The following facts are drawn from the pleadings.

On or about January 8, 2019, Taylor was involved in a motor vehicle accident while driving a vehicle owned by Robert McGregor, and involving a vehicle owned and operated by Gregorio Parades. (Amended Complaint ("AC") (Doc. No. 12) ¶ 11.) Taylor was subsequently arrested for leaving the scene of an accident as well as other criminal offenses. (*Id.* ¶ 12.)

In late 2016, Gregorio Parades and Lina Fernandes filed a lawsuit against Taylor and McGregor in the Supreme Court of the State of New York, Suffolk County, alleging that Taylor and McGregor's negligent conduct leading to the accident caused Parades serious physical injury. (*Id*. ¶¶ 16–20.) The complaint also alleges that Parades and Fernandes are entitled to punitive damages against Taylor because she acted recklessly and with conscious disregard and indifference to the life and safety of others. (*Id*. ¶ 21.) Finally, the complaint alleges that as a result of the injuries Parades suffered, his wife has been deprived of his services and society. (*Id*. ¶ 22.)

Allstate is an insurance company organized and existing under the laws of the State of Illinois and authorized to issue policies within the State of New York. (*Id*. ¶ 2.) Allstate issued two polices to the D'Arienzos, an Auto Policy and a Personal Umbrella Policy ("PUP"), both of which were in force at all times mentioned herein. (*Id*. ¶¶ 24–25, 27–28.) Taylor is not named as an insured on the Declarations Page of the Auto Policy provided to the D'Arienzos. (*Id*. ¶ 36.) However, the Auto Policy does name Taylor as one of the "listed drivers on your policy." (Am. Compl. Exhibit B ("AC Exhibit B") (Doc No. 12-3)at 5–10, 12.)[1] Additionally, the Auto Policy's "Coverage detail for 2004 Honda Odyssey," one of the D'Arienzos' three insured vehicles, specifies that the "rating information" for that vehicle is based on the vehicle being driven "over 7,500 miles per year, 0-3 miles to work/school, unmarried female age 30, good driver rate." (*Id*. at 14.) Taylor is not named as an insured on the Declarations Page of the PUP provided to the D'Arienzos. (AC ¶ 47.)

The Auto Policy contains the following pertinent language:

> We will pay for all damages an insured person is legally obligated to pay because of bodily injury or property damage, meaning:

[1] All page numbers correspond to ECF pagination.

(1) bodily injury, sickness, disease or death to any person, including loss of services; and
(2) damage to or destruction of property, including loss of use.
Under these coverages, your policy protects an insured person from claims for accidents arising out of the ownership, maintenance or use, loading or unloaded of an insured auto.
We will not pay any punitive or exemplary damages, fines or penalties under Bodily Injury Liability Coverage or Property Damage Liability Coverage.
We will defend an insured person sued as the result of an auto accident, even if the suit is groundless or false. We will choose the counsel. We may settle any claim or suit if we believe it is proper. We will not defend an insured person sued for damages which are not covered by this policy.

**Insured Persons**
(1) While using your insured auto:
  (a) you,
  (b) any resident, and
  (c) any other person using it with your permission.
(2) While using a non-owned auto:
  (a) you,
  (b) any resident relative using a four-wheel private passenger auto or utility auto.
[...]
**Insured Autos**
(1) Any auto described in the Policy Declarations. This includes the four-wheel private passenger auto or utility auto you replace it with.
  […]
(4) A non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person.

**Definitions**
(3) "Bodily injury" – means physical harm to the body, sickness, disease, or death.

*Id*. ¶ 26; *see* AC Exhibit B.)

The PUP contains the following pertinent language:

**Definitions Used in This Policy**
1. "You" and "your" means the person named on the Policy Declarations as the insured [and] that person's resident spouse.
   […]
3. "Bodily injury" means:
   a) physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;

b) shock, mental anguish or mental injury.
[…]

6. "Insured person" means:
   a) You, and any other person who is named on the Policy Declarations;
   b) any person related to you by blood, marriage or adoption who is a resident of your household; or
   c) any dependent person in your care, if that person is a resident of your household;
   but such residents are not insured person(s) as to the ownership, maintenance or use of a motor vehicle, aircraft, or watercraft owned by such resident(s).
7. "Occurrence" means an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in bodily injury, personal injury or property damage.

**Excess Liability Insurance – Coverage XL**
Allstate will pay damages which an insured person becomes legally obligated to pay because of personal injury, bodily injury, or property damage, subject to the terms, conditions and limits of this policy. Personal injury, bodily injury and property damage must arise from a covered occurrence. We will not pay any punitive or exemplary damages. Fines and penalties imposed by law are not included.

(AC ¶ 29; *see also* AC Exhibit C (Doc No 12-4).)

At the time of the accident, Taylor did not reside with the D'Arienzos. (AC ¶ 13.) According to the D'Arienzos, Taylor has not resided with them or visited their home since March or early April of 2018, (*id.* ¶¶ 34–35), and at all times relevant to the instant matter, Taylor was living with friends in various hotels, (*id.* ¶ 33). In their Answer, Parades and Fernandes deny that these assertions are true. (Answer to Amended Complaint ("Answer") (Doc No. 12) ¶¶ 11, 15.) Allstate also asserts in the Amended Complaint that the vehicle Taylor was driving at the time of the accident was not an "insured auto," (AC ¶ 40), an assertion that Parades and Fernandes also deny, (Answer ¶ 11).

Allstate brings four causes of action in the Amended Complaint. First, Allstate requests an Order from this Court declaring that because Taylor is not a resident of the D'Arienzo

household, is not named as an insured, and was not driving an insured auto, that under and pursuant to the terms of the Auto Policy Allstate does not have an obligation to provide coverage for the liability incurred by Taylor in the underlying accident. (*Id.* ¶¶ 30–44.) Second, Allstate requests an Order from this Court declaring that Taylor is not an insured person under the PUP, and therefore, pursuant to the terms of the PUP, Allstate does not have an obligation to provide coverage. (*Id.* ¶¶ 45–52.) Third, Allstate seeks a declaratory judgment finding that Allstate does not have an obligation to provide coverage to Taylor for any punitive damages that may be awarded against her. (*Id.* ¶¶ 53–57.) Fourth, and finally, Allstate requests that this Court find that Allstate does not have an obligation to provide coverage to Taylor for her liability with respect to Fernandes's loss of services and society caused by Parades's injuries.

The Instant Motion

Allstate now moves for judgment on the pleadings pursuant to Rule 12(c). Allstate first asserts that it heavily relied upon the information contained in two affidavits, the Affidavits of Donna D'Arienzo (Doc. No. 32-12) and Steven D'Arienzo (Doc. No. 32-11), in drafting the pleadings, and so argues that these two pieces of extrinsic evidence can be considered by the Court without converting the instant motion into one for summary judgment. (Memorandum in Support of Motion for Judgment on the Pleadings ("Mem.") (Doc. No. 32-1) at 14–16). The D'Arienzos represent in these affidavits that they forced Taylor to move out of their home, changed the locks when she moved out, and retain custody of Taylor's son, Blake, whom Taylor has not visited since her departure from the D'Arienzo home. (Affidavit of Donna D'Arienzo ¶¶ 11–18; Affidavit of Steven D'Arienzo ¶¶ 11–18.) Further, the D'Arienzos did not consider Taylor to be a resident of their home and did not intend that she be covered under either the Auto

Policy or the PUP. (Affidavit of Donna D'Arienzo ¶¶ 20–24; Affidavit of Steven D'Arienzo ¶¶ 20–24.)

Next, Allstate argues that New York law applies to the instant action, which places the burden on the putative insured to establish coverage in coverage dispute issues. (Mem. at 16–18.) Further, Allstate asserts that Taylor is not a resident as defined by the Auto Policy, as demonstrated by the Affidavits. (*Id*. at 18–23.) Allstate also argues that because she is not named in the policy or a resident at her parent's home, Taylor is not an insured person under the meaning of the PUP. (*Id*. at 23–24.) Further, the vehicle involved was not an insured auto under the Auto Policy. (*Id*. at 24–26.) Moreover, Allstate argues that it is not liable for Fernandes's loss of services claim, because it is a derivative claim from a personal injury claim and does not qualify as a covered claim under the Auto Policy and New York Law. (*Id*. at 26–27.) Finally, Allstate asserts that it is not liable for Fernandes's claim for punitive damages because New York law forbids insurance coverage for punitive damages as against public policy. (*Id*. at 27–28.)

In response, defendants Parades and Fernandes first argue that Allstate cannot rely on the Affidavits in the instant motion, because they were not appended to the Amended Complaint or integral to it, and because Allstate provided no notice that the Affidavits existed prior to their submission with the instant motion. (Memorandum of Law in Opposition to Plaintiff's Motion ("Opp.") (Doc. No. 33) at 6–8; 16–18.) Next, Parades and Fernandes argue that Taylor was covered by the Auto Policy because she was a "listed driver" of one of the insured vehicles under the policy, (*id*. at 9–10, 20–21), and because there is no evidence that Taylor's absence was more than transient or that she had "knowingly desired or intended to abandon" her parents' home, (*id*.

at 22–24). Finally, Parades and Fernandes argue that the Auto Policy specifically states that it provides coverage for Fernandes's loss of services claim. (*Id*. at 19–20.)

In reply, Allstate points to Exhibit K, (Doc. No. 34–1), which provides a line-by-line comparison for the Amended Complaint and the information contained in the Affidavits, to demonstrate that Allstate relied extensively on the Affidavits in drafting the Amended Complaint. (Reply in Support of Rule 12(c) Motion ("Reply") (Doc. No. 34) at 3–5.) Allstate also argues that being a "listed driver" on the Auto Policy is not the same as being an "insured person," and does not entitle Taylor to coverage. (*Id*. at 5–8.) Further, because Taylor did not reside with the D'Arienzos, she was not an insured person under the Auto Policy. (*Id*. at 9–10.) Moreover, the vehicle Taylor was driving during the accident was not an insured auto under the policy, further indicating that no coverage is available. (*Id*. at 10–11.)

In an unsolicited sur-reply, Parades and Fernandes append a recent decision in *People v. Barowitz*, 2021 NY Slip Op 30798(U) (Sup. Ct.), denying an insurance company a declaratory judgment that it was not obligated to provide coverage for a "named driver" who was not a resident of the policyholder's household. (Sur-Reply (Doc. No. 36).) Parades and Fernandes also append two additional cases, *Matter of Liberty Mut. Ins. Co. v. Interboro Mut. Ins. Co.*, 2019 NY Slip Op 32501(U) (Sup. Ct.), and *Kennedy v. Valley Forge Ins. Co.*, 203 A.D. 2d 930 (N.Y. App. Div.), *aff'd without opinion in* 84 N.Y.2d 963 (1994), to demonstrate that listing an individual as a "named driver" or "operator" without defining this term in the policy has been found to create an ambiguity in coverage that is to be construed in favor of the insured and against the insurer. (*Id*.)

Allstate argues in its response to the sur-reply that *Barowitz* addresses first-party coverage under an uninsured motorist endorsement in a Travelers Insurance Company policy,

which is entirely different from the third-party liability at issue here. (Response to Sur-Reply (Doc. No. 37) at 1.) Additionally, Allstate argues that third-party liability coverage is clearly defined in the Auto Policy and PUP, and limited to the policyholders, their spouses, and any resident relative, none of which applies to Taylor. (*Id*. at 1–3.)

In reply, Parades and Fernandes largely stand upon their Sur-Reply, and assert that it was filed in order to comply with ongoing ethical obligations to supply the Court with recent and controlling case law on point. (Reply in Support of Sur-Reply (Doc. No. 38).)

**STANDARD OF REVIEW**

Rule 12(c) states, "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "In reviewing a motion for judgment on the pleadings pursuant to Rule 12(c), the Court must accept the non-moving party's allegations as true and draw all reasonable inferences in that party's favor." *Logical Operations, Inc. v. Comptia, Inc.*, No. 20-CV-6238 (EAW), 2021 WL 1099619, at *2 (W.D.N.Y. Mar. 23, 2021) (internal quotations and citations omitted). "Moreover, '[w]hen, as in this case, a plaintiff moves for judgment under Rule 12(c) on claims in [its] own pleading, allegations in that pleading that have been denied by the non-moving party are generally deemed to be false.'" *Id.* (quoting *Banker v. Moulton*, No. 08-CV-122, 2013 WL 5945800, at *1 (D. Vt. Nov. 6, 2013)).

As with Rule 12(b)(6) motions, Rule 12(c) motions generally are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. *See* Fed. R. Civ. P. 12(d). However, a court may, without converting the motion into one for summary judgment, consider documents that are appended to, incorporated by reference in, or integral to the complaint; and it may also consider

matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002).

## DISCUSSION

### I. Applicable Law

The parties agree that this insurance dispute is governed by New York law. Under New York law, "[w]here the terms of an insurance policy are clear and unambiguous, interpretation of those terms is a matter of law for the court." *Town of Harrison v. Nat'l Union Fire Ins. Co.*, 89 N.Y.2d 308, 316 (1996). When resolving disputes about insurance coverage, courts first look to the language of the policy. *See Raymond Corp. v. Nat'l Union Fire Ins. Co.*, 5 N.Y.3d 157, 162 (2005). Courts should construe policy terms "in a way that affords a fair meaning to all of the language employed by the parties in the contract and leaves no provision without force and effect." *Consolidated Edison Co. of N.Y. v Allstate Ins. Co.*, 98 N.Y.2d 208, 221–22 (2002).

"However, where the meaning of a policy of insurance is in doubt or is subject to more than one reasonable interpretation, all ambiguity must be resolved in favor of the policyholder and against the company which issued the policy." *Boggs v. Commercial Mut. Ins. Co.*, 220 A.D.2d 973, 974 (N.Y. App. Div. 3rd Dep't. 1995) (internal quotation marks and citations omitted). "Where there is ambiguity it is the insurer's burden to prove that the construction it advances is not only reasonable, but also that it is the only fair construction of the language," *id.* (citing *Tri Town Antlers Found. v Fireman's Fund Ins. Co.*, 158 A.D.2d 908, 909 (N.Y. App. Div. 4th Dep't.), *aff'd*, 76 N.Y.2d 841 (1990)), "viewed through the eyes of the 'average man on the street,'" *Venigalla v. Penn Mut. Ins. Co.*, 130 A.D.2d 974, 975 (N.Y. App. Div. 4th Dep't. 1987) (quoting *Lachs v Fidelity & Cas. Co.*, 306 N.Y. 357, 364, *rearg. denied*, 306 N.Y. 941 (1954)).

## II. Coverage Under the Auto Policy

Allstate seeks a judgment declaring that because Taylor is not a resident of the D'Arienzo household, is not named as an insured, and was not driving an insured auto, that under and pursuant to the terms of the Auto Policy, Allstate does not have an obligation to provide coverage. (AC ¶¶ 30–44.)

Parades and Fernandes cite three cases to support their argument that Allstate is liable for injuries resulting from the accident in which Taylor was involved. In *Barowitz*, the Supreme Court of New York County found that the listing of a non-resident "named driver" on an insurance policy, which did not define "named driver" or "driver" or expressly disallow coverage of "named drivers" under the policy, created an ambiguity that was resolved in favor of the insured. *People v. Barowitz*, 2021 NY Slip Op 30798(U), ¶ 4. Similarly, the Appellate Division found that a "named driver" who was not otherwise listed as an insured person on the policy was nevertheless entitled to coverage because of the ambiguity created through the use of this undefined term: "if [the insurers] wished to exclude 'named driver' from coverage, they were required to do so in clear and unmistakable language." *Kennedy v. Valley Forge Ins. Co.*, 203 A.D.2d at 930. Finally, in *Liberty Mutual*, the decedent was not an insured person under the policy but had been named as an "operator," and the policy carrier had been charged a premium because of this designation. The *Liberty Mutual* court determined that a person named as "operator" under the policy must be found to be entitled to coverage because "if the court were to accept [the insurer's] argument, someone named as an operator under the policy would appear to obtain no benefit from this status, nor would any benefit result from the payment of additional premiums." *Matter of Liberty Mut. Ins. Co. v. Interboro Mut. Ins. Co.*, 2019 NY Slip Op 32501(U), ¶ 4.

Allstate asserts that the language of the policy is clear, and Taylor, as a non-resident of the D'Arienzo household, does not fall within the category of insured person. However, even assuming for the sake of argument that Taylor was not a resident of her parents' home, and therefore does not qualify as a resident under the Auto Policy, whether she is covered under that policy remains ambiguous. Taylor is a "listed driver," a term that is not defined in the Auto Policy and would seem to suggest, to the average man on the street, some degree of coverage. Further, information about Taylor's age, commute, and driving record were factored into the rating of one of the cars owned by the D'Arienzos. As in *Barowitz*, *Kennedy*, and *Liberty Mutual*, these facts create an ambiguity in coverage which must, under New York law, be construed in favor of the insured.

Allstate also argues that even if Taylor is entitled to coverage as an insured person under the Auto Policy, she was not driving an insured auto at the time of the accident and, therefore, this accident is not covered. New York courts have upheld denial of coverage where the vehicle involved was not an insured auto within the relevant policy. *See, e.g., Bailey v. Allstate Ins. Co.*, 243 A.D.2d 520, 521, 663 (N.Y. App. Div. 2d Dep't. 1997). Here, the Auto Policy provides that an insured auto includes "[a] non-owned auto used by you or a resident relative with the owner's permission. This auto must not be available or furnished for the regular use of an insured person." (AC ¶ 26; AC Exhibit B.) In their Answer, Parades and Fernandes deny Allstate's allegation that Taylor was not driving an insured auto at the time of the accident; the Court thus assumes Allstate's assertion to be false for the purpose of this Memorandum and Order. From the pleadings, it is possible to conclude that Taylor was driving McGregor's car with his permission, and there is no indication that the vehicle had been made available to her for regular

use. Drawing all reasonable inferences in favor of the nonmovants, it is possible that Taylor was driving an insured auto within the meaning of the Auto Policy.

Accordingly, Allstate is not entitled to judgment on the pleadings with respect to the first cause of action.

## III. Coverage Under the PUP

New York courts have found that "whether a person is a 'resident' of an insured's 'household' requires something more than temporary or physical presence and requires at least some degree of permanence and intention to remain." *Lindner v. Wilkerson*, 769 N.Y.S.2d 551, 552 (N.Y. App. Div. 2nd Dep't. 2003) (collecting cases). However, "where the absence from home is a temporary one, the courts have declined to require that the person seeking coverage dwell under the same roof at the time of the accident to be a 'resident of the household' or 'member of the family' to come within the meaning of some other similar phrase to effect coverage." *Appleton v. Merchs. Mut. Ins. Co.*, 16 A.D.2d 361, 365 (N.Y. App. Div. 4th Dep't. 1962). Courts have found it suggestive of residency where the departure from home was transient in nature, such as when an individual enlisted in military service. *See id.* at 364–66.

Allstate's second cause of action requests a declaratory judgment that Allstate has no obligation to provide coverage to Taylor under the PUP because Taylor is not an insured person under that policy. The PUP defines covered individuals, in relevant part, as the policyholder "and any other person who is named on the Policy Declarations" or "any person related to you by blood, marriage or adoption who is a resident of your household." (AC ¶ 29; AC Exhibit C.) Unlike in the Auto Policy, Taylor's is not named in the Policy Declarations or anywhere else in the PUP. Thus, the relevant question is whether Taylor was a resident of her parents' home at the time of the accident.

In their Answer, Parades and Fernandes deny that Taylor was a non-resident of the D'Arienzo household, or that she had not lived or visited with her parents since 2018. Allstate's factual assertions on this point must therefore be assumed to be false for the purposes of the instant motion. Parades and Fernandes argue that Taylor's absence from her parents' home was transient in nature and caused by her opioid addiction. (Opp. at 22–24.) Taylor resided in temporary accommodations, such as hotels, and never established a new permanent residence; her child remained at her parents' home; and she continued to be listed as a driver on her parents' Auto Policy. Drawing all reasonable inferences in favor of the nonmovants, one could conclude that Taylor's absence from her parents' home was temporary, and that she remains a resident of her parents' home as defined by the PUP and New York law. Therefore, Allstate is not entitled to judgment on the pleadings with respect to the second cause of action.

## IV. Punitive Damages

In New York, "an insurer may not indemnify an insured for a punitive damages award, and a policy provision purporting to provide such coverage is unenforceable." *J.P. Morgan Secs. Inc. v. Vigilant Ins. Co.*, 21 N.Y.3d 324, 334 (2013). "The rationale underlying this public policy exception emphasizes that allowing coverage 'would defeat the purpose of punitive damages, which is to punish and to deter others from acting similarly.'" *Id.* at 334–35 (quoting *Home Ins. Co. v American Home Prods. Corp.*, 75 N.Y.2d 196, 200 (1990)).

Because it is against public policy for an insurance carrier to indemnify an insured for punitive damages, Allstate has no obligation to defend or indemnify Taylor for any punitive damages that may be awarded against her.

**V. Loss of Services**

Allstate cites *Brustein v. New Amsterdam Cas. Co.*, 255 N.Y. 137 (1931), to argue that because Lina Fernandes did not suffer any physical injury herself, she may not bring a claim for loss of services. However, "the *Brustein* line of cases stands for the proposition that a policy which contains a limitation of liability to 'bodily injuries' only, does not obligate the insurer to pay derivative claims for loss of services which occurred because of injuries suffered by a parent or spouse." *Cty. of Chemung v. Hartford Cas. Ins. Co.*, 496 N.Y.S.2d 933, 935 (N.Y. Sup. Ct. 1985). Where a policy describes its liability coverage more broadly, then that broader description will control. *See Floyd v. Consol. Indem. & Ins. Co.*, 237 A.D. 190, 194 (N.Y. App. Div. 2nd Dep't. 1932) (Finding an insurance policy covered loss of services claims where the policy indemnified the insured against "loss, etc., 'on account of death or bodily injuries,'" and went "further by reading 'and including loss arising from the liability and responsibility imposed by law on the Assured, as owner, for death or injuries to person or property resulting from negligence in the operation of such motor vehicles….'"). Further, as a matter of law, "there is included in the term 'personal injury' a right to indemnity for loss of services." *Gaouette v. Aetna Life Ins. Co.*, 253 A.D. 388, 389 (N.Y. App. Div. 2nd Dep't. 1938).

The Auto Policy provides, "We will pay for all damages an insured person is legally obligated to pay because of bodily injury or property damage, meaning: (1) bodily injury, sickness, disease or death to any person, including loss of services; and (2) damage to or destruction of property, including loss of use." (AC ¶ 26; AC Exhibit B.) Where, as here, a policy includes loss of services within its definition of bodily injury, application of the *Brustein* rule would require this Court to ignore the plain language of the contract. As in *Floyd*, the Court construes this given definition of bodily injury to mean what it says and indemnify the insured

against loss of services claims. Additionally, the PUP specifically states that "Allstate will pay damages which an insured person becomes legally obligated to pay because of personal injury…." (AC ¶ 29; *see also* AC Exhibit C.) As a matter of New York law, indemnification for personal injury includes indemnification for loss of services. Thus, the Auto Policy and PUP both expressly state that their coverage includes claims for loss of services, and Allstate is not entitled to judgment with respect to this cause of action.

**CONCLUSION**

For the reasons set forth above, Allstate's motion for judgment on the pleadings is granted with respect to the third cause of action and denied with respect to the first, second and fourth causes of action. This matter is recommitted to Chief Magistrate Judge Pollak for pre-trial supervision, including settlement discussion, as appropriate.

SO ORDERED.

Dated: Brooklyn, New York
March 30, 2021

*Roslynn R. Mauskopf*

ROSLYNN R. MAUSKOPF
United States District Judge